**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**UNITED STATES OF AMERICA,**

**VS.**                                              **CRIMINAL ACTION NO. 4:07CR140-P-B**

**JOSE SANTOS GONZALES AND
TARRASCO STEEL COMPANY, INC.,**                          **DEFENDANTS.**

**ORDER**

These matters come before the court upon Defendants' Motion to Suppress Evidence Seized by Use of Improperly and Illegal Obtained Search Warrant [28]; Amended Motion to Suppress [38]; Motion to Require Government to Reveal Identity of Confidential Informant and Motion to Require Government to Provide Documents Provided by Confidential Information to Government [39]; Motion to Remove Surplus Language from Indictment and Motion in Limine to Preclude Use of the Term "Illegal Alien" at Trial [40]; Motion to Dismiss Indictment Based on Selective Prosecution [41]; and Motion in Limine to Determine Trial Admissibility of Certain Social Security Administration No-Match Letters [47]. After due consideration of the motions and the responses filed thereto, the court finds as follows, to-wit:

**A. Motion to Suppress Evidence Seized by Use of Improperly and Illegal Obtained Search Warrant and Amended Motion to Suppress**

The defendants move pursuant to Fed. R. Crim. P. 41(h) to suppress all documents, information, and evidence obtained or seized in this case. In their original motion to suppress, the defendants argue that the search warrant was illegally and improperly obtained because (1) the warrant failed to state with particularity the documents that were to be seized, resulting in an

1

overbroad seizure of the Defendants' business records – *i.e.*, "virtually all" business records since the business' inception in 2003 and the warrant lacked specificity as to the documents to be seized; (2) the affidavit of Special Agent Stephen Cole attached to the application for the warrant was based on information received from a confidential informant who was unreliable and who had incorrect, unreliable, and uncorroborated information; and (3) the information provided by the confidential informant was stale since it was given to Special Agent Cole in September or October 2006 and the search warrant was issued on March 27, 2007.

In their Amended Motion to Suppress, the Defendants add that the investigation of them by the Department of Homeland Security (DHS) began when a confidential information presented documents taken without authority from the Defendants' office – *e.g.*, three "No-Match" letters from the Social Security Administration stating that the Defendants were employing 49, 64, and 63 employees, respectively, whose social security numbers did not match their given identities. The Defendants argue that these No-Match letters are insufficient to draw an inference of wrongdoing and that the DHS found no additional independent facts to support probable cause other than that Defendant Gonzales is Hispanic. Accordingly, the Defendants argue that DHS lacked probable cause to obtain a search warrant of the Defendants' documents and that therefore, the documents seized should be suppressed.

The court notes that other than a few general principles regarding search warrants, the Defendants have cited no mandatory authorities that are on point.

The Government sets out in their opposition brief the following basic facts.

In September 2006 the Office of the Bureau of Immigration and Customs Enforcement (ICE)

received information from an "undocumented source"[1] that there were illegal aliens working on the new bridge crossing the Mississippi River in Greenville, Mississippi on Highway 82.

In early October 2006, ICE received additional information from a second confidential source that specifically Tarrasco Steel was employing illegal aliens to install steel re-bar at the new Greenville, Mississippi bridge in addition to five other federal transportation projects in Mississippi, Louisiana, and Memphis, Tennessee. On October 12, 2006, ICE Special Agents Steven Cole and Brad Harris interviewed the second confidential source yielding the following allegations against Tarrasco Steel: (1) many of the company's employees were illegal aliens from Mexico; (2) many of these employees were using counterfeit alien registration cards and social security cards; (3) Jose Gonzales, the owner of Tarrasco Steel, knew the employees were illegal aliens because many of them were from his hometown in Mexico or were his relatives; and (4) Gonzales falsified the illegal alien employees' information on their I-9 employment forms and other employment records. The confidential source also provided SA Harris with copies of pay receipts for the illegal alien employees containing the names of the employees, home addresses, social security numbers and payroll information. The source also provided the ICE Agents with copies at least three "No-Match" letters for 2004, 2005, and 2006 from the Social Security Administration indicating that the social security numbers of 49, 64, and 63 employees, respectively of Tarrasco Steel did not match the names provided with the numbers.

Special Agent Cole contacted Special Agent Steve Wood of the Social Security Administration Office of Inspector General in Jackson, Mississippi to query the validity of the social

---

[1] The Government uses the term "undocumented source" to denote a person whose identity the Government seeks to keep confidential. The person or persons' identity is the subject of one of the Defendants' motions.

security numbers of the suspect employees. Special Agent Wood advised that of 42 employees, 26 were unlawfully using social security numbers not assigned to them.

In November 2006 Special Agent Cole contacted the U.S. Department of Labor, Wage, & Hour Division regarding Tarrasco Steel and received copies of the wage and hour reports for 2004 submitted by Tarrasco Steel and signed by Jose Gonzales. These 2004 receipts listed the names of six employees previously identified by Special Agent Wood as using false social security numbers.

Agents then began to investigate Gonzales' immigration history. They determined that he is a Lawful Permanent Resident of the U.S. and a Mexican citizen by birth. His immigration file, or "A-file" contains a copy of a birth certificate of his daughter born in 2002 which lists her mother as Bertha Becerril who was born in 1983 in Mexico. Special Agent Cole found no evidence that Bertha Becerril had ever entered the U.S. legally. Cole also determined that one of the Tarrasco Steel employees identified by the SSA as having false social security number was an Emmanuel Becerril. According to Cole, his 19 years of experience with the Border Patrol and INS led him to opine that Emmanuel was likely a relative of Bertha Becerril given his opinion that Becerril was not a common surname in Mexico.

In January 2007, Special Agent Cole and Special Agent Chase Bozeman of ICE surveilled Tarrasco Steel's worksite at the Greenville bridge, its office in Greenville, and the residence of Gonzales. At Gonzales' residence, the agents observed a Hispanic female who appeared the approximate age of Bertha Becerril with a young Hispanic girl who appeared the same age as Gonzales' daughter. The agents noted that Gonzales' A-file contained numerous documents indicating that Gonzales was married to and resided with U.S. citizen Lauren Arendale, yet the Hispanic woman at Gonzales' residence did not match the photo of Arendale.

4

At this point, Special Agent Cole believed he had probable cause to believe that some employees of Tarrasco Steel had procured unlawful identification documents for gaining employment with Tarrasco Steel and that Gonzales was aware of these employees' illegal status but continued to employ them. Special Agent Cole sought a search warrant to seek ten different types of documents from Tarrasco Steel: (1) original I-9 employment authorization forms; (2) employee files of suspect employees; (3) correspondence to and from Tarrasco Steel regarding the identity used by the suspect employees to gain employment; (4) payroll records for employees using or having used unauthorized identification documents; (5) contracts for Tarrasco Steel to perform work on federal transportation projects; (6) computer hardware, including any and all computer equipment; (7) computer software; (8) any and all journals, ledger logs, records, correspondence, memoranda, telephone, and communication service billing information and stored documentation; (9) bank statements, loan applications, money drafts, letters of credit, money orders, cashier checks, bank checks, safe deposit keys, vault keys, safes, and any and all documents related to bank activities; and (10) records to establish the persons who had control, possession, custody, or dominion over the property searched, including vehicles located at the premises.

The U.S. Magistrate issued the search warrant on March 27, 2007 and the agents thereafter executed it.

The court will address each of the Defendants' arguments for suppression in turn.

<u>1. Particularity and Specificity of the Search Warrant</u>

The Defendants argue that the search warrant failed to state with particularity the documents that were to be seized, resulting in an overbroad seizure of the Defendants' business records – *i.e.*, "virtually all" business records since the business' inception in 2003. The Defendants also argue that

5

the search warrant was not specific enough.

The Fourth Amendment provides that a warrant must "particularly describ[e] the place to be searched and the persons or things to be seized." The test for particularity is whether "the description in the warrant would permit an executing officer to reasonably know what items are to be seized." *U.S. v. Beaumont*, 972 F.2d 553, 560 (5th Cir. 1992) (citing *Steele v. United States*, 267 U.S. 498, 503-04 (1925)). In *U.S. v. Humphrey*, the Fifth Circuit upheld "an 'all records' search of a business '[w]here probable cause exist[ed] to believe that ... all the records of a business are likely to constitute evidence.'" 104 F.3d 65, 69 (5th Cir. 1997) (quoting *Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir. 1986)).

**Having reviewed the search warrant and accompanying affidavit, the court concludes that the warrant was sufficiently particular and specific to satisfy the Fourth Amendment such that the executing officer could reasonably know what items were to be seized. The ten different categories of documents and other items listed in the accompanying affidavit and referenced in the warrant were particularly and specifically listed and were reasonably related to the investigation in this case.**

2. Reliability of Confidential Informant as Basis for Warrant

The Defendants argue that the affidavit attached by Special Agent Stephen Cole to the application for the warrant was based on information received from a confidential informant who was unreliable and who had incorrect, unreliable, and uncorroborated information.

In *U.S. v. Blount*, the Fifth Circuit wrote:

> [W]e elected to rehear this case *en banc* in order to explain that the "totality of the circumstances" standard announced in [*Illinois v.*] *Gates* does not impose a requirement of corroboration in all cases. In this context, we iterate our previous

authority and hold that, absent specific reasons for police to doubt his or her truthfulness, an ordinary citizen, who provides information to police at a crime scene or during an ongoing investigation, may be presumed credible without subsequent corroboration.

The Defendants argue that though they are not sure of the identity of the confidential source and therefore have moved for the court to require the Government to disclose the source, they believe that the person is likely a disgruntled employee who stole business documents to give to ICE agents. However, the Defendants cite no authority that stolen documents are not allowed to be used as a basis for probable cause supporting a search warrant and there is no allegation that law enforcement officers prompted the source to take the documents. Furthermore, the source did not simply give a verbal allegation that the Defendants were knowingly employing illegal aliens. Rather, the source provided documentary evidence supporting the allegation – *e.g.*, No-Match letters and pay receipts containing the suspect employees' names, home addresses, social security numbers, and payroll information.

In any event, the Government is correct that the investigation resulted in other evidence that corroborated the source's allegations as discussed more fully above – *e.g.*, the information from the SSA Office of Inspector General confirming that 26 of 42 employees were in fact using false social security numbers, the information received from the U.S. Department of Labor, Wage, & Hour Division showing that the 2004 wage and hour reports listed names of six of the twenty-six employees the OIG stated were using false social security numbers, the investigation of Gonzales' immigration file, and the surveillance of Tarrasco Steel's worksite and Gonzales' residence.

The court concludes that from the totality of the circumstances, the reliability of the confidential sources and information corroborating the second confidential informant's allegations

7

were sufficient to not run afoul of the Fourth Amendment's warrant requirements.

3. Staleness of the Information Used for Search Warrant

The Defendants argue that the information provided by the confidential informant was stale since it was given to Special Agent Cole in October 2006 and the search warrant was not issued until March 27, 2007 – approximately five months later. Regarding staleness, the Fifth Circuit in *U.S. v. Webster* held:

> Staleness is to be determined on the facts of each case. ... No mechanical counting of time between the events alleged in the affidavit and the time the warrant is issued will be made. Moreover, a finding of staleness or timeliness of information can depend upon the nature of the unlawful activity and, when the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and the issuance of the warrant, the information need not be regarded as stale.

734 F.2d 1048, 1056 (5th Cir. 1984).

The Government argues that the crimes being investigated in this case occurred over an extended period of time and the type of information sought would normally be maintained for long periods of time in the place where agents were applying for a warrant to search – *i.e.*, Tarrasco Steel, an ongoing business.

Having considered the parties' arguments, the court concludes that the Government is correct and, pursuant to *Webster*, the information given to Special Agent Cole used in support of the application for the search warrant was not stale.

4. Conclusion

For the reasons discussed above, the court concludes that the Defendants' motion to suppress

should be denied. In any event, the good faith exception would apply to dispel any doubts about the validity of the search warrant in this case. According to the Fifth Circuit, review of the sufficiency of a search warrant "involves a two-step process, whereby we must first determine whether the good-faith exception to the exclusionary rule applies." *U.S. v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997) (citing *U.S. v. Leon*, 468 U.S. 897, 922-23 (1984)). "Only if a novel legal question is presented or the good-faith exception does not apply must we then 'ensure that the magistrate had a substantial basis for concluding that probable cause existed.'" *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). The good faith exception to the exclusionary rule provides "that evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *Id* (quoting *U.S. v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988).

The Defendants have not demonstrated that the law enforcement officials in this case did not act in objectively reasonable good-faith reliance upon the search warrant used in this case - a search warrant the court has already concluded was proper and not violative of the Fourth Amendment.

The court also concludes that the Defendants request for an evidentiary hearing regarding their motion to suppress should be denied. Regarding whether a hearing must be held, the Fifth Circuit in *U.S. v. Harrelson*, wrote:

> [A]n evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact. ... Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief. ... Factual allegations set forth in the defendant's motion, including any accompanying affidavits, must be 'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented. ... General or conclusory assertions,

9

founded upon mere suspicion or conjecture, will not suffice. ... Inherent in these flexible guidelines is a judicial recognition that 'the determination of whether a hearing is required [on a motion to suppress] is necessarily dependent upon the particular facts which attend a particular request, and the district court is properly left with a certain amount of discretion in this regard.'

705 F.2d 773, 737 (5th Cir. 1983) (internal citations omitted).

The Defendants' motion to suppress, amended motion to suppress, and the supporting memorandum suppress scarcely cites authorities and fails to demonstrate that a substantial claim is presented. Rather, the Defendants set forth only general and conclusory assertions.

**B. Motion to Require Government to Reveal Identity of Confidential Informant and Motion to Require Government to Provide Documents Provided by Confidential Informant to Government**

The Defendants move to require the Government to identify the confidential source who provided information to ICE Agents as well as copies of any documents the source provided. The Defendants assert that the source may have been a disgruntled former employee who may have taken certain documents from Tarrasco Steel without permission. The Government denies that they are required to disclose the identity of the confidential source.

The Defendants argue that their need for the disclosure of the source, as well as the documents he or she provided, outweigh the reasons for maintaining anonymity, citing *U.S. v. De Los Santos*, 810 F.2d 1326 (5th Cir. 1987). However, the Fifth Circuit in *De Los Santos* wrote that "both the Supreme Court and this circuit have held that the government's privilege of nondisclosure [of the identify of an informant] overrides any sixth amendment right to the identity of an information for purposes of confrontation." *Id*. at 1334 (citing *McCray v. Illinois*, 386 U.S. 300

(1967)). The Court further held that the defendant in that case "was not denied his sixth amendment right to confront his accuser when the government did not release the identity of the informant, or the information supplied by the informant." *Id*. at 1335.

The Government cites several cases for the proposition that they need not disclose the identity of the informant when the informant merely provided information used to support application for a search warrant.

In *Rovario v. United States*, the Supreme Court observed that "the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." 353 U.S. 53, 59 (1957). The Court also observed: "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation to citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."

In *U.S. v. Wilson*, the Fifth Circuit held that "[w]hen granting or denying disclosure of the identity or location of an informant, the court's discretion is guided by three factors: (1) the level of involvement in the alleged criminal activity, (2) the helpfulness of disclosure to any asserted defense, and (3) the government's interest in non-disclosure." 77 F.3d 105, 111-12 (5th Cir. 1996).

However, the Fifth Circuit in *U.S. v. Mendoza* held that "the Government need not disclose the identity of an informer when the sole purpose to be served is to attack the probable cause supporting a search warrant."433 F.2d 891, 894 (5th Cir. 1970); *see also*, *U.S. v. Harrison*, 432 F.2d 1328, 1329 (5th Cir. 1970) ( "there is no federal evidentiary rule that the identity of an informer must

invariably be disclosed"); *U.S. v. Diaz*, 655 F.2d 580, 587 (5th Cir. 1981) ("It is settled that the Rovario principle does not require disclosure and production ['where an informant was a mere tipster']"); *U.S. v. Moreno*, 588 F.2d 480, 494 (5th Cir. 1979) ("where the informant was not an active participant in the criminal activity, but only a tipster, disclosure of his identity is not required by *Rovario*...."); *Suarez v. United States*, 582 F.2d 1007, 1011 (5th Cir. 1978) (in "those cases in which the informant was not an active participant, but rather a mere tipster ... disclosure of the informant's identity is not required by Rovario.").

The court observes that with regard to the three *Wilson* factors, the Defendants have not alleged that the confidential informant was involved in the alleged criminal activity. As to the helpfulness of disclosure to an asserted defense, the Defendants' argument that the source may have been a disgruntled employee who stole documents from Tarrasco Steel is unavailing. Even if this were true, the Defendants have cited no authorities that the source was prompted by law enforcement officers to take the documents and therefore the question of whether or not the source was a disgruntled employee who took documents without permission does not come to bear in this case. As to the third factor, the Government's interest in non-disclosure is to protect the anonymity of the source so to preserve the policy noted in *Rovario* to encourage citizens to report wrongdoing to law enforcement officers.

Accordingly, the court concludes that the Defendants' Motion to Require Government to Reveal Identity of Confidential Informant and Motion to Require Government to Provide Documents Provided by Confidential Information to Government should be denied.

**C. Motion to Remove Surplus Language from Indictment and Motion in Limine to Preclude Use of the Term "Illegal Alien" at Trial**

The Defendants move to remove from the Indictment the term "illegal alien" and to preclude use of that term during trial, arguing that the term is racially charged. The court concludes that this motion is without merit since "illegal alien" is a term commonly used by the courts. *E.g.*, *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 144 (2002); *Zadvydas v. Davis*, 533 U.S. 678, 716 (2001); *I.N.S. v. St. Cyr*, 533 U.S. 289, 341 (2001); *City of Indianapolis v. Edmond*, 531 U.S. 32, 33 (2000); *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 46 (2000); *U.S. v. Sanchez-Hernandez*, 507 F.3d 826, 833 (5th Cir. 2007); *U.S. v. Sanchez-Ramirez*, 497 F.3d 531, 533 (5th Cir. 2007); *U.S. v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007). Furthermore, the term accurately describes the concept of a person who is not a citizen or lawful resident of the United States and who is in the United States illegally.

**D. Motion to Dismiss Indictment Based on Selective Prosecution**

The Defendants move to dismiss the Indictment because they argue they are being selectively prosecuted since Jose Gonzales is Hispanic. The Defendants allege that "[v]irtually every subcontractor, as well as Hill Brothers, the general contractor, had undocumented workers on their payroll on or before March 29, 2007. None is being prosecuted, other than the Defendants." The Defendants also allege that ICE agents detained at least two illegal aliens who were employed by Traylor-Masson Construction and one of them was a re-entry felon, yet this contractor is not being prosecuted. The Defendants cite a March 29, 2007 raid at the bridge in Memphis, Tennessee wherein five illegal aliens employed by W.L. Hailey, a general contractor, and one illegal alien employed by

13

Ferguson Painters, a subcontractor, was detained, yet neither business is being prosecuted.

The court notes that the Defendants cite no law in support of their argument.

To prevail in a defense of selective prosecution, the defendants must meet two requirements which the Fifth Circuit has characterized as a "heavy burden." *U.S. v. Ramirez*, 765 F.2d 438, 439 (5th Cir. 1985). First, a defendant "must make a *prima facie* showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted." *Id*. Second, if the defendant establishes the first prong, "he must then demonstrate that the government's selective prosecution of him has been constitutionally invidious. The showing of invidiousness is made if a defendant demonstrates that the government's selective prosecution is actuated by constitutionally impermissible motives on its part, such as racial or religious discrimination." *Ramirez*, 765 F.2d at 440. (citing *U.S. v. Lichenstein*, 610 F.2d 1272, 1281 (5th Cir.), *cert. denied*, 447 U.S. 907 (1980)).

The Government argues that even if other contractors were employing illegal aliens, ICE Agents began their investigation of Tarrasco Steel and its owner, Jose Gonzales, after receiving information from a confidential source specifically implicating Tarrasco Steel, including inculpatory business documents from Tarrasco Steel. The Government avers that it did not receive such information regarding any of the other contractors.

Having considered the two-step test in establishing the defense of selective prosecution, the court concludes that the Defendants have not met their heavy burden in establishing that they were prosecuted "because of" Jose Gonzales' national origin or race. It is undisputed that ICE received verbal and documentary information specifically regarding Tarrasco Steel, rather than the other

contractors, which evolved into a full-scale investigation that the Government argues resulted in corroborating evidence justifying the search warrant and Indictment. Thus, the Defendants have not presented a *prima facie* showing of selective prosecution since they have not shown that there were other contractors similarly situated – *i.e.*, contractors implicated by specific verbal and documentary evidence – that were not prosecuted. Nor have the Defendants presented any evidence, other than conclusory allegations, that the Government has prosecuted them with invidious intent "because of" the Defendants' Hispanic origin.

Accordingly, the Motion to Dismiss Indictment Based on Selective Prosecution should be denied.

**E. Motion in Limine to Determine Trial Admissibility of Certain Social Security Administration No-Match Letters**

The Defendants move to exclude the three Social Security Administration "No-Match" letters as inadmissible pursuant to Fed. R. Evid. 403, arguing that the attached letters written by administrative agencies establish that such letters are not evidence, in and of themselves, that the employer has knowledge of employing illegal aliens using false social security numbers.

For example, the No-Match letters themselves contain the following language: "This letter does not imply that you or your employee intentionally gave the government wrong information about the employee's name or Social Security number. Nor does it make any statement about an employee's immigration status. You should not use this letter to take any adverse action against an employee, such as laying off, suspending, firing, or discriminating against that individual, just because his or her Social Security number appears on the list. Doing so could, in fact, violate State

15

or Federal law and subject you to legal consequences."

The Government argues that the 2004 No-Match letter listed 49 social security numbers that were incorrect or assigned to other individuals, the 2004 letter listed 64 incorrect or invalid numbers, and the 2006 letter listed 63 invalid numbers. Several of the social security numbers appeared in more than one year's list – *e.g.*, 21 common social security numbers appeared on the 2004 and 2005 letters, while 6 common numbers appeared in the 2004 and 2006 letters. The Government also avers that though the No-Match letters advised Tarrasco Steel to review the numbers and submit corrected information, Tarrasco Steel did not respond to any of the letters.

The Defendants have cited no mandatory authorities indicating that such evidence is not admissible to support an inference of knowingly employing illegal aliens. The attached letters and forms from the administrative agencies are not law and having no binding effect upon this court. The evidence is clearly relevant pursuant to Fed. R. Evid. 402 since it speaks to whether the Defendants knowingly employed illegal aliens. Though the evidence is prejudicial, it is not unfairly prejudicial pursuant to Fed. R. Evid. 403. Therefore, the motion in limine should be denied.

The court notes that the Defendants argue in their rebuttal brief that: (1) pursuant to 8 C.F.R. 274a.2, the Government's own rules forbade the Defendants from questioning their employees regarding the authenticity of any social security card or identification which appeared on its face to be authentic; and (2) pursuant to 8 C.F.R. 274a.1 (l)(2), the Defendants were precluded by law from requesting additional identification documents from any employee other than a social security card and other identification which appeared on its face to be valid.

The Defendants have mischaracterized these two regulations.

Regarding 8 C.F.R. 274a.2, subsection (a)(3) provides that "[i]n conjunction with completing the Form I-9, an employer ... must examine documents that evidence the identity and employment eligibility of the individual. The employer ... must each complete an attestation on the Form I-9 under penalty of perjury." Furthermore, "an employer ... must within three business days of the hire ... [p]hysically examine the documentation presented by the individual establishing identity and employment eligibility ... and ensure that the documents presented appear to be genuine and to relate to the individual." 8 C.F.R. 274a.2(b)(1)(ii)(A). Subsection (b)(1)(v)(C)(1) provides that a social security card is an acceptable document to establish employment authorization. Subsection (b)(1)(vi) provides that "unless the individual indicates or the employer ... has actual or constructive knowledge that the individual is not authorized to work, an employer ... must accept a receipt for the application for a replacement document or a document [indicating temporary evidence of permanent residence status or refugee status] in lieu of the required document in order to comply with any requirement to examine documentation imposed by this section...." However, this subsection (titled "Special Rules for Receipts") involves a situation wherein an employer is offered a receipt for the *application* for a document such as a social security card or documents regarding Form I-94 indicating temporary evidence of permanent resident status or refugee status. This subsection does not act to forbid the Defendants from questioning their employees regarding the authenticity of any social security card or identification which appeared on its face to be authentic as claimed by the Defendants.

Similarly, 8 C.F.R. 274a.1 does not stand for the proposition that Defendants were precluded by law from requesting additional identification documents from any employee other than a social security card and other identification which appeared on its face to be valid – especially after receipt

17

of three No-Match letters. Section 274a.1. is entitled "Definitions." Subsection (l)(1) provides in pertinent part:

> The term knowing includes having actual or constructive knowledge. Constructive knowledge is knowledge that may fairly be inferred through notice of certain facts and circumstances that would lead a person, through the exercise of reasonable care, to know about a certain condition. Examples of situations where the employer may, depending on the totality of relevant circumstances, have constructive knowledge that an employee is an unauthorized alien include, but are not limited to, situations where the employer:
> \*\*\*
> (iii) Fails to take reasonable steps after receiving information indicating that the employee may be an alien who is not employment authorized such as —
> \*\*\*
> (B) Written notice to the employer from the Social Security Administration reporting earnings on a Form W-2 that employees' names and corresponding social security account numbers fail to match Social Security Administration records;
> \*\*\*
>
> (2)(i) An employer who receives written notice from the Social Security Administration as described in paragraph (l)(1)(iii)(B) of this section will be considered by the Department of Homeland Security to have taken reasonable steps-- and receipt of the written notice will therefore not be used as evidence of constructive knowledge--if the employer takes the following actions:
>
> (A) The employer must check its records to determine whether the discrepancy results from a typographical, transcription, or similar clerical error. If the employer determines that the discrepancy is due to such an error, the employer must correct the error and inform the Social Security Administration of the correct information (in accordance with the written notice's instructions, if any). **The employer must also verify with the Social Security Administration that the employee's name and social security account number, as corrected, match Social Security Administration records.** The employer should make a record of the manner, date, and time of such verification, and then store such record with the employee's Form I-9(s) in accordance with 8 CFR 274a.2(b). The employer may update the employee's Form I-9 or complete a new Form I-9 (and retain the original Form I-9), but the employer should not perform a new Form I-9 verification. **The employer must complete these steps within thirty days of receiving the written notice.**

(B) ...**If the employee confirms that its records are correct, the employer must promptly request that the employee resolve the discrepancy with the Social Security Administration** (in accordance with the written notice's instructions, if any). **The employer must advise the employee** of the date that the employer received the written notice from the Social Security Administration and advise the employee **to resolve the discrepancy with the Social Security Administration within ninety days of the date the employer received the written notice from the Social Security Administration**.

(C) If the employer is unable to verify with the Social Security Administration within ninety days of receiving the written notice that the employee's name and social security account number matches the Social Security Administration's records, **the employer must again verify the employee's employment authorization and identity within an additional three days by following the verification procedure specified in paragraph (l)(2)(iii) of this section**.

8 C.F.R. 274a.1(l)(1) (emphasis added).

Pursuant to Subsection 274a.1(l)(2)(iii), during verification procedure described above after receiving a Social Security Administration "No-Match" letter, which includes the completion of a new I-9 Form, "[t]he employer must not accept any document ... that contains a disputed social security account number ...."

Furthermore, Subsection 274a.1(l)(3) states:

Knowledge that an employee is unauthorized may not be inferred from an employee's foreign appearance or accent. Nothing in this definition should be interpreted as permitting an employer to request more or different documents than are required under section 274A(b) of the Act or to refuse to honor documents tendered that on their face reasonably appear to be genuine and to relate to the individual, **except a document about which the employer has received written notice described in paragraph (l)(1)(iii) of this section and with respect to which the employer has received no verification as described in paragraphs (l)(2)(i)(C) or (l)(2)(ii)(B) of this section.**

8 C.F.R. 274a.1(l)(3) (emphasis added).

Accordingly, the court concludes that two regulations cited by Defendants do not justify excluding or otherwise limiting the use of the No-Match letters during trial.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) Defendants' Motion to Suppress Evidence Seized by Use of Improperly and Illegal Obtained Search Warrant [28] and Amended Motion to Suppress [38] are **DENIED**;

(2) Defendants' Motion to Require Government to Reveal Identity of Confidential Informant and Motion to Require Government to Provide Documents Provided by Confidential Information to Government [39] is **DENIED**;

(3) Defendants' Motion to Remove Surplus Language from Indictment and Motion in Limine to Preclude Use of the Term "Illegal Alien" at Trial [40] is **DENIED**;

(4) Defendants' Motion to Dismiss Indictment Based on Selective Prosecution [41] is **DENIED**; and

(5) Defendants' Motion in Limine to Determine Trial Admissibility of Certain Social Security Administration No-Match Letters [47] is **DENIED**.

**SO ORDERED** this the 15th day of January, A.D., 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE